UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| STEVEN E. SWENSON § | |
| *Plaintiff,* § | |
| § | |
| vs. § | |
| § | CAUSE NO. SA-10-CA-602-OG |
| § | |
| SCHWAN'S CONSUMER BRANDS § | |
| NORTH AMERICA, INC. § | |
| *Defendant.* § | |

**PLAINTIFF STEVEN E. SWENSON'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff Steven E. Swenson and files this his Response to Defendant Schwan's Consumer Brands North America Inc.'s ("Defendant" or "Schwans") Motion for Summary Judgment. In support thereof, Plaintiff would respectfully show the Court as follows:

**I. Introduction**

Defendant Schwans has filed a Motion for Summary Judgment, seeking to dismiss Plaintiff's claims for age discrimination under the Age Discrimination in Employment Act ("ADEA") and the Texas Commission on Human Rights Act ("TCHRA"), arguing that Defendant has proffered a non-discriminatory reason for the termination complained of by Plaintiff and no fact question exists that age discrimination was a motivating factor behind said

termination. For the reasons stated in this Response, Defendant's motion should be denied in its entirety.

## II. Summary Judgment Evidence

In responding to Defendant's motion for summary judgment, the plaintiff relies on the evidence listed below, as well as on those exhibits to Defendant's motion that are cited in this Response.

| Item | Exhibit Number |
|---|---|
| Deposition of Steven Swenson | 1 |
| Deposition of William Dale | 2 |
| Sworn Declaration of Don Richards | 3 |
| William Dale 1/18/2010 Email to Kristin Smart (A699) | 4 |
| William Dale 2/1/2010 Termination Letter to Steven Swenson (A694) | 5 |
| Steven Swenson 1979 Job Application to Defendant (A45-A48) | 6 |
| Sworn Declaration of Charles Foster | 7 |
| Sworn Declaration of Steven Swenson | 8 |
| Defendant's Vacation Policy (Swenson177-180) | 9 |
| Recording of Texas Workforce Commission Sworn Hearing | 10 |
| Swenson Email Exchange with Route Service Payroll Dept (Swenson300-301) | 11 |
| Steven Swenson 1989 Job Application to Defendant (A41-A44) | 12 |

## III. Factual Background

Steven Swenson is a 59-year old man who began working for Defendant in 1979 at the age of 26. Ex. 8 at ¶3-4.  Defendant is a frozen food delivery company.  Swenson worked his way up through the company ranks to the position of District Sales Manager. *See* Ex. 1 at 5:16-20.  In this position, Mr. Swenson reported to the Regional Sales Manager position. *See* Ex. 2 at 12:21-23.  At the time of his wrongful termination, the Regional Sales Manager position for Swenson's region was held by William Dale.  *See* Ex. 2 at 12:11-14 & 12:21-23.   Prior to

becoming Regional Sales Manager, Mr. Dale was a District Sales Manager along side Mr. Swenson. *See* Ex. 3 at ¶5-7. In this capacity both Dale and Swenson were supervised by then Regional Sales Manager, Don Richards. *See* Ex. 3 at ¶5-7.

In November of 2008, Dale was promoted to the position of Regional Sales Manager. *See* Exhibit 2 at 12:11-14 & 12:21-23. Just over one year later, on January 18, 2010, Dale contacted Schwans HR to request permission to immediately terminate Mr. Swenson. *See* Ex. 3 at ¶4. At this time, Dale was 48 years old. Mr. Swenson was terminated by William Dale on February 1, 2010 - less than a month before Mr. Swenson's 57th birthday. *See* Ex. 3 at ¶3-4, Ex. 5 (Termination Letter) & Ex. 6.

Despite having terminated his employment, Dale admits that Mr. Swenson had an excellent reputation in the company, was a good employee, and had a strong work ethic. *See* Ex. 2 at 22:2-22:18. In fact, Mr. Swenson was the highest performing sales manager in the district according to internal objective measurements. *See* Ex. 2 at p. 31:11-17.

Despite these facts, Dale wanted to replace Mr. Swenson with someone younger. *See* Ex. 7 at ¶3. Following Dale's taking over of the district, Mr. Swenson was made the butt of age-related jokes by members of the management team. *See* Ex. 1, p. 34:2-15 & 35:15-22. On at least two separate occasions in December 2009 (a month before Dale recommended Swenson's termination), Bill Dale acknowledged and laughed at age-related jokes made towards Mr. Swenson by John Barr, a fellow District Sales Manager. *See Id.* On one such occasion, Barr and Dale referred to Swenson as "My disabled dad" to a hotel clerk while the three men checked into a hotel. *See Id.* On another occasion when the three were at a restaurant together, John Barr

requested to a waiter that Mr. Swenson be brought "a senior citizen's menu." *Id.* On both occasions Dale laughed and thought the comments were "pretty funny." *See Id.*

The following month, William Dale made the recommendation to Defendant's HR department that Mr. Swenson be terminated. *See* Ex. 4 at ¶4. Dale based his termination recommendation on the false allegation that Mr. Swenson had violated Defendant's vacation policy. *See* Exhibit 2, p. 33:1-8. Specifically, Dale falsely accused Mr. Swenson of having "entered into an agreement" to knowingly pay a subordinate employee, Charles Foster, for fourteen days of vacation that the employee did not take off. *See* Ex. 5. This allegation was demonstrably false and made in bad faith.

During the time period relevant to this case (2009), Charles Foster worked as a commissioned Customer Service Representative ("CSR"). CSRs are sales people; they are not paid by the hour and they routinely work six days per week. *See* Ex. 7 at ¶4; Ex. 2 at p. 28:1-9 & 42:17-25; Ex. 3 at ¶7-11; & Ex. 8 at ¶10-11. In 2009, Mr. Foster generally took Wednesday as his day off. *See* Ex. 7 at ¶4-5 & Ex. 8 at ¶10-11. At some point in the latter half of 2009, Foster made a request to begin using vacation days in full-day increments on Saturdays so that he could have Saturday as well as Wednesday off. *See Id.* Taking vacation in single day increments is expressly allowed by Defendant's policies. *See* Ex. 9.[1] Foster did not work on his vacation days. *See* Ex. 7 at ¶4-5 & Ex. 8 at ¶10-11.

In September 2009, the week after Foster's first approved Saturday vacation day, Defendant's Route Service payroll department contacted Mr. Swenson to inquire as to the vacation arrangements made for Mr. Foster. *See* Ex. 11. Mr. Swenson explained that Mr. Foster

---

[1] Exhibit 9 - Defendant's Vacation Policy - States as follows at page 3, bullet point 4 counting from the top: "Commissioned / Outside Sales, semi Drivers, and Short Haul Drivers may request and use their accrued vacation in full day increments."

generally worked six days per week and that that is why he had approved the vacation time. *See Id.* The payroll department acknowledged Swenson and did not raise any question as to the practice or Swenson's explanation for same. *See Id.* It is undisputed that the payroll department did not seek any further clarification or report the matter as questionable to any other person or department at the company. According to Defendant's own vacation policy, "[p]ay practice rules are maintained by Route Service payroll." *See* Ex. 9 at p. 4, fourth bullet item from top of the page.

Defendant has changed its stated reason for Mr. Swenson's discharge numerous times. As noted above, Dale originally alleged that Swenson was being terminated for having "entered into an agreement" to pay a subordinate employee, Charles Foster, for fourteen (14) days of vacation that were the employee's normal day off. *See* Ex. 5 - Dale's Termination Letter to Mr. Swenson. Later, in sworn testimony to the Texas Workforce Commission, Dale completely changed his story and testified that the reason Swenson was terminated was because he paid Foster for sixteen (16) days of vacation that Foster actually worked. *See* Ex. 10 - Recording of Texas Workforce Commission Sworn Hearing - at 11 minutes, 38 seconds into the recording.[2] Still later, in his deposition testimony, Mr. Dale backed off from both of his previous positions, stating that Foster was indeed taking Wednesday's off and being "required" by Swenson to use vacation

---

[2] The relevant testimony is as follows:   (See Exhibit 10(a) for excerpt)

*Hearing Officer (hereinafter "H.O.":   How did the claimant [Mr. Swenson] violate the policy?*
*Dale:   Vacation pay was paid out for time not taken off.*
*H.O.:   How much time was paid out for time not taken off?*
*Dale:   16 days*
*H.O.:   So did Mr. Foster work days that he was receiving vacation pay for?*
*Dale:   That is correct.*
*H.O.:   Which days did Mr. Foster work that he received vacation for?*
*Dale:   They were Saturdays from September through December.  It was 16 consecutive Saturdays.*
*H.O.:   He actually worked those days?*
*Dale:   Correct*

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                           Page 5

for Saturdays - a day he would normally work - but that Foster only worked "a few of them." *See* Ex. 2 at p. 37:20-25 & 38:10-14. Dale later largely retracted this as well, admitting that he have never even asked Swenson whether Swenson knew of any work Foster may have done on a vacation day. *See* Ex. 2 at p. 53:20-24.

Despite the actual facts of the matter running contrary to all three versions given by Defendant for its discharge of Mr. Swenson, Mr. Dale recommended his termination in January 2010. This ended Mr. Swenson's three-decade career with the Defendant.

Importantly, Dale *did not* recommend the termination of Charles Foster who, it is undisputed, was under 40 years old. *See* Ex. 4 at ¶4. Foster was terminated for a different reason.

***Schwans HR Conducts "Investigation"***

*After* Dale made his decision to terminate Mr. Swenson, *then* he contacted HR to have them do whatever was necessary to support his decision. *See* Ex. 4 at ¶4. As a part of this so-called investigation, HR interviewed Mr. Swenson and Mr. Foster. Dale and the company's HR representative tried to get Mr. Foster to blame Mr. Swenson and say that taking vacation time was Swenson's idea. *See* Ex. 7 at ¶6-9. Dale told Foster that no action would be taken again him [Foster] if he "stated this was all Steven Swenson's idea. *See Id*. Foster refused to falsely blame Swenson "because taking this vacation time was my [Foster's] idea and was legitimate." *See Id*. Because he refused to make false statements against Steve Swenson in furtherance of Mr. Dale's effort to terminated Swenson, Foster was fired too. *See Id*.

***Similarly-Situated Younger Employees Received More Favorable Treatment***

There is no evidence in the summary judgment record indicating that *any* other supervisor has ever been terminated by the Defendant for any of the ever-changing supposed violations of vacation policy alleged against Mr. Swenson.  *See* Ex. 3 at ¶9-11; Ex. 10.[3]

There is evidence in the record, however, of similarly-situated, younger employees receiving more favorable treatment for more serious infractions of company policy.  William Dale, for one, who was reprimanded but not terminated for sending "inappropriate" emails to co-workers. *See* Ex. 1 at p. 54:13-57:23 & Ex. 2 at p. 74:13-25.[4] Another similarly-situated, younger employee was an attendee at a company event in which he reportedly became intoxicated and was making inappropriate comments to other employees.  *See* Ex. 1 at p. 54:13-57:23 & Ex. 2 at p. 84:4-85:1 & 85:16-86:22.  This employee's conduct became so problematic that Mr. Dale, his supervisor, had to ask him to leave the event.  *See Id*.  Despite this fact, Dale did not even reprimand him, let alone terminated his employment.  Dale later had to be instructed to terminate this employee because the employee in question had been the source of numerous serious harassment complaints from multiple employees.  *See Id.*

---

[3] The relevant testimony at 19 minutes, 32 seconds into the recording is as follows: (See Ex. 10B for Excerpt)

*McKinney:  Are you aware of any other supervisors that have been terminated for the same reason?*
*Dale:     I'm not.*

[4] Dale testified under oath that he cannot recall the inappropriate nature of the emails he sent (*i.e.* whether they were sexually inappropriate, racially inappropriate, age-based jokes, etc.)  Despite discovery requests and an Order on a motion to compel, Defendant still refuses to turn over the emails or the disciplinary records of Mr. Dale relating to this event.

## IV. Standard of Review

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When the party seeking summary judgment is seeking summary judgment on a claim for which the non-moving party would bear the burden of proving at trial, the party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The party can do this by: (1) submitting summary judgment evidence that negates the existence of a material element of the opposing party's claim, or (2) by showing there is no evidence to support an essential element of the opposing party's claim. *Celotex*, 477 U.S. 322-25. After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman*, 113 F.3d at 533. The Court must consider "the record taken as a whole" drawing "all reasonable inferences in favor of the nonmoving party" and refrain from making credibility determinations or weighing of the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal quotation marks and citations omitted). If the non-movant sets forth specific facts in

support of allegations essential to his claim, a genuine issue of material fact is presented, and summary judgment is inappropriate.

### V. Argument and Authorities

A. SWENSON HAS ESTABLISHED A *PRIMA FACIE* CASE OF AGE DISCRIMINATION
   1) *PRIMA FACIE* STANDARD

Under the McDonnell Douglas framework a plaintiff is first required to provide sufficient evidence to establish a *prima facie* case of age discrimination. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005). To establish a *prima facie* case of age discrimination, "a plaintiff must show (1) that he was discharged; (2) that he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 at 378 (5th Cir. 2010)(*quoting Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

Defendant concedes that Swenson has established a *prima facie* case.  *See* Defendant's motion at p. 3. It is undisputed that Swenson (1) was discharged; (2) that he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was replaced by someone who was substantially younger.[5]

B. DEFENDANT'S STATED REASON FOR DISCHARGE WAS A PRETEXT FOR AGE DISCRIMINATION

Even assuming, *arguendo*, that defendant's vaguely-stated and ever-changing reason(s) for Swenson's discharge are sufficient to meet the burden of production put on it in the summary

---

[5] Swenson was replaced by Ray Maroney, who was 48 years old at the time of Swenson's wrongful discharge.  *See* Ex. 1 at p. 29:22-30:1.

judgment context, there is more than sufficient evidence in the record to raise a fact issue as to whether defendant's articulated reason was a pretext for unlawful discrimination.

### 1) EVIDENCE INDICATING THAT DEFENDANT'S STATED REASON FOR DISCHARGE IS FALSE IS SUFFICIENT TO DEFEAT SUMMARY JUDGMENT

To defeat summary judgment, Swenson must offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, even if true, is only one of the reasons for its conduct, and another 'motivating factor' was the plaintiff's protected characteristic (mixed-motive[s] alternative). *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004). If a plaintiff demonstrates that discrimination was a motivating factor in the employment decision, it then falls to the defendant to prove as a matter of law that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails. *Id; See also Bryant v. Compass Group USA, Inc.,* 413 F.3d 471, 479 (5th Cir. 2005). Importantly, a plaintiff need not show that the protected activity was the sole motivating factor for the adverse action, but only that it was *a* motivating factor. *Equal Employment Opportunity Commission v. EGS Electrical Group, LLC*, __F.Supp.__, 2007 WL 869529 (S.D.Tex. 2007), *citing Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir.2001).[6]

The fact finder may infer the ultimate fact of discrimination if they find that Defendant's "proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578

---

[6] Plaintiff Swenson's claims of age discrimination are made under both the ADEA and the Texas Commission on Human Rights Act. Defendant's motion incorrectly argues that a Plaintiff in such a case must establish that age was the "but-for" cause of his termination. This is simply not the case. *See Quantum Chemical Corporation v. Toennies*, 47 S.W.3d 473 (Tex. 2001).

(5th Cir. 2003); *see also Staten v. New Palace Casino, LLC*, 2006 WL 1737438, 187 Fed. Appx. 350, 358 (5th Cir. 2006). "No further evidence of discriminatory animus is required because once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation.'" *Id*. (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147 (2000)). Defendant is entitled to summary judgment only if a reasonable fact finder would be *compelled* to believe the defendant's explanation is true. *Argyropoulos v. City of Alton*, 539 F. 3d 724, 736 (7th Cir. 2008); *Culver v. Gorman & Co*., 416 F.3d 540, 547-48 (7th Cir. 2005). Generally, an employee may show pretext by presenting evidence that the employer's reason for the adverse employment action was (1) factually baseless; (2) not the actual motivation for the discharge; or (3) insufficient to motivate the discharge. *See, e.g., Koski v. Standex Int'l Corp*., 307 F.3d 672, 677 (7th Cir. 2002) (citation omitted); *Raad v. Fairbanks North Star Borough School Dist*., 323 F3d 1185, 1194 (9th Cir. 2003).

2) DEFENDANT'S STATED REASON FOR DISCHARGE IS FALSE; TRUE REASON FOR DISCHARGE WAS DISCRIMINATION.

The summary judgment evidence in this case overwhelming indicates that Defendant's stated reason(s) for discharge are factually baseless, not the actual motivation for the discharge and/or insufficient to motivate the discharge.

(a) DEFENDANT'S STATED REASON FOR DISCHARGE WAS FACTUALLY BASELESS AND/OR INSUFFICIENT TO MOTIVATE THE DISCHARGE

As noted above, the summary judgment record is replete with evidence indicating that Defendant's ever-changing stated reason for discharge - namely that Mr. Swenson required a

subordinate to take 16 or more vacation days and then work on said vacation days - is factually baseless and/or insufficient to motivate Swenson's discharge. A few examples:

- The record indicates that Swenson *did not* force Mr. Foster to work on his vacation days and that Foster *did not* work on those days;

- Defendant's decision-maker, William Dale, made the decision to terminate Steven Swenson (an only Swenson) prior to contacting Defendant's HR Department to obtain their assistance with the firing. *See* Ex. 4. Defendant now attempts to misrepresent this fact and falsely allege that Dale was merely following orders from HR;

- Defendant's decision-maker, William Dale, has changed his story and testified differently under oath multiple times as to the factual basis for his decision to discharge Swenson;

- Swenson's actions do not violate the vacation policy proffered by the Defendant and Swenson's conduct was cleared by Defendant's own payroll department, who is expressly in charge of said rules;

- Mr. Foster has testified under oath that he *did not* tell the Defendant that he was working his vacation days or that Swenson had instructed him to do so;

- Don Richards, former supervisor of Steven Swenson *and* William Dale has verified, under oath, that Swenson's actions with regard to Foster's vacation requests were not in violation of company policy and were not a valid reason for immediate discharge; and

- William Dale and Defendant's HR representative tried to pressure Charles Foster to lie about Swenson's activities to support Dale's decision to terminate him. When Foster refused to lie for the company, he too was terminated.

Clearly, there is sufficient evidence to raise a fact issue as to this discharge and Defendant's motion for summary judgment must be denied.

### (b) SWENSON'S SUPERVISOR DEMONSTRATED DISCRIMINATORY ANIMUS

As demonstrated above, there is more than sufficient evidence in the summary judgment record to raise a fact issue as to the discriminatory animus of Defendant's decision-maker, William Dale. In the words of Charles Foster, "Mr. Dale did not like Mr. Swenson because he wanted a young lap dog who he could control better." *See* Ex. 7 at ¶3. Following Dale's taking over of the district, Mr. Swenson was made the butt of age-related jokes by members of the management team. *See* Ex. 1, p. 34:2-15 & 35:15-22. On at least two separate occasions in December 2009, Bill Dale participated in a discussion and laughed at age-related jokes made at the expense of Mr. Swenson by John Barr, a fellow District Sales Manager and a direct report to Bill Dale. *See Id.* On one such occasion, Barr referred to Swenson as "My disabled dad" to a hotel clerk while the three men checked into a hotel. *See Id.* On another occasion when the three were at a restaurant together, John Barr requested to a waiter that Mr. Swenson be brought "a senior citizen's menu." *Id.* Not only did Dale not take any action to call Mr. Barr down for this behavior, on both occasions he laughed and thought the comments were "pretty funny." *See Id.*

The following month, William Dale fired Mr. Swenson and replaced him with a younger employee. *See* Ex. 4 at ¶4.

Such conduct on the part of a decision-maker is more than sufficient to defeat summary judgment. *See Robinson v. Runyon*, 149 F.3d 507, 512-13 (6th Cir. 1998) (evidence that coworkers circulated fake employment application incorporating racial stereotypes of African-

Americans, and that supervisors laughed upon reading the document, supported employee's discriminatory discharge claim).

In its motion, Defendant incorrectly argues that the so-called "stray remark" doctrine applies in the context of this case. It does not. At this stage a plaintiff does not have to meet the strict *CSC Logic* "*stray remark*" test in order to use discriminatory remarks as circumstantial evidence that his protected characteristic was the reason for an adverse employment action. The Fifth Circuit has recognized the inherent value of workplace remarks as circumstantial evidence of discriminatory intent, even though such remarks may be "stray remarks" that would not ordinarily suffice as direct evidence of employment discrimination. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) (holding that workplace remarks sufficed as circumstantial evidence from which an inference of discriminatory intent could be drawn even though comments were found to be "stray remarks" under the *CSC Logic* test); *see also, Danville v. Regional Lab Corp.*, 292 F3d 1246,1251 (10th Cir. 2002) (holding same); Michael J. Zimmer, Slicing & Dicing of Individual Disparate Treatment Law, 61 La. L. Rev. 577, 583 (2001) ("Evidence that, if believed, shows that the age of a worker was on the mind of a decisionmaker does not require a fact finder to draw the inference that [the] worker's discharge was because of his age, but it surely supports . . . drawing that inference. ").

Accordingly, a plaintiff wishing to use workplace remarks as circumstantial evidence of employment discrimination -- not direct evidence -- need only prove that the remarks demonstrate (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision-maker. *Laxton*, 333 F.3d at 583; *Sandstad*, 309 F.3d at 899; *Russell*, 235 F.

3d at 225.  In the case at bar, Dale's participation and ratification of such statements made by his direct subordinate and aimed squarely at Plaintiff Swenson certainly indicated a discriminatory animus on his part.

### (c) SIMILARLY-SITUATED YOUNGER EMPLOYEES WERE TREATED MORE FAVORABLY THAN SWENSON

While it certainly isn't required, the summary judgment record in this case demonstrates that younger employees of the Defendant were treated more favorably regarding disciplinary decisions.  The record contains several instances of receiving more favorable treatment for more serious infractions of company policy than that which Mr. Swenson was falsely accused.

William Dale, for one, who was reprimanded but not terminated for sending "inappropriate" emails to co-workers during a period when he held the same job position as that occupied by Mr. Swenson. *See* Ex. 1 at p. 54:13-57:23 & Ex. 2 at p. 74:13-25.[7]  Another similarly-situated, younger employee was an attendee at a company event in which he reportedly became intoxicated and was making inappropriate comments to other employees.  *See* Ex. 1 at p. 54:13-57:23 & Ex. 2 at p. 84:4-85:1 & 85:16-86:22.   This employee's conduct became so problematic that Mr. Dale, his supervisor, had to ask him to leave the event.  *See Id*.  Despite this fact, Dale did not even reprimand him, let alone terminated his employment.  Dale later had to be instructed to terminate this employee because the employee in question had been the source of numerous serious harassment complaints from multiple employees.  *See Id.*

---

[7] Dale testified under oath that he cannot recall the inappropriate nature of the emails he sent (*i.e.* whether they were sexually inappropriate, racially inappropriate, age-based jokes, etc.)  Despite discovery requests and an Order on a motion to compel, Defendant still refuses to turn over the emails or the disciplinary records of Mr. Dale relating to this event.

### (d) DEFENDANT FAILED TO FOLLOW ITS OWN PROGRESSIVE DISCIPLINE POLICY

When a defendant does not follow its own disciplinary policy that alone allows the trier of fact to infer discriminatory intent. *See e.g., Blow v. San Antonio,* 236 F.3d 293, 296 (5th Cir. 2001). In the case at bar, Defendant utterly failed to follow its own progressive discipline policy with regard to Mr. Swenson. *See* Ex. 2 at p. 73:2-74:9. Instead, it jumped straight to a termination for an offense that, even if true, certainly was not an offense requiring immediate termination. *See* Ex. 3 at ¶11.

Defendant's deviation from its own policies in this regard is sufficient, even standing alone, to defeat Defendant's motion.

### (e) DEFENDANT IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE BASIS OF SO-CALLED AFTER-ACQUIRED EVIDENCE

Lastly, Defendant argues that Swenson's ability to recover front or back pay is precluded by the existence of "after-acquired evidence" – i.e., evidence that an employee engaged in misconduct that would have justified the employee's immediate discharge, but for the fact that the employer did not acquire the evidence until after the discharge. Defendant claims that Swenson purposely falsified his employment application.

"Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Smith v. Berry Co.*, 165 F.3d 390, 395 (5th Cir.1999) (*citing McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-363 (1995)). The EEOC, to decide whether the employer would have discharged the plaintiff, first looks to the employer's handling of past comparable

incidents.[8] *See also John Cuneo, Inc.*, 298 N.L.R.B. 856, 861 (1990) (noting that treatment of similarly situated employees carries great weight in evaluating whether employer would have terminated employee for act of misconduct).

Defendant has produced no evidence that it has ever terminated an employee for failing to list a suspended license on a job application. The only evidence defendant cites to at all is a generic affidavit from an HR representative. *See* Exhibit A to Defendant's Motion for Summary Judgment. This declaration is wholly self-serving. *See, e.g. Welch v. Liberty Mach. Works, Inc.*, 23 F.3d 1403, 1406 (8th Cir. 1994) (employer's affidavit was a self-serving document, and did not establish the fact, for purposes of summary judgment, that it would have taken adverse employment action if it had known about employee's alleged misconduct). Considering that Defendant has produced no evidence that any of its employee have ever been terminated on these grounds, and the self-serving nature of Defendant's declarations, a reasonable jury could find that Defendant would not have terminated Swenston. *See, e.g. Dotson v. Pfizer, Inc.*, 558 F.3d 284 (4th Cir. 2009) (whether after-acquired evidence defense applied to limit company's liability was question for jury); *Ricky v. Mapco, Inc.*, 50 F.3d 874 (10th Cir. 1995) (whether employer would have terminated employee was question for jury in discrimination suit in which employer invoked after-acquired evidence doctrine).

Additionally, Mr. Swenson has submitted summary judgment evidence that seriously calls into question the factual basis for Defendant's motion as to this affirmative defense. *See* Ex. 8 at ¶4-8. Therefore, whether Defendant would actually have terminated Swenson is a

---

[8] EEOC Enforcement Guidance on After Acquired Evidence, No. 9 15.002 (12/14/95) (available at: http://www.eeoc.gov/policy/docs/mckennon.html).

disputed issue of material fact. Defendant has certainly not established the issue as a matter of law, and Defendant is therefore not entitled to summary judgment on this affirmative defense.

### VI. Conclusion and Prayer

This is a clear case of two parties that have serious factual disputes that require a jury to resolve. The disputes between the parties in this case involve just the sort of credibility assessments that are not fit grist for the summary judgment mill. *Dibidale of Louisiana, Inc. v. American Bank & Trust Co. et al,* 916 F.2d 300 (5th Cir. 1990).

For the foregoing reasons, Plaintiff Steven Swenson respectfully requests that this Court deny Defendant's Motion for Summary Judgment, and prays for all other and further relief to which she may be justly entitled.

Respectfully submitted,

THE MCKINNEY LAW FIRM
A PROFESSIONAL CORPORATION

By: /s/ *Christopher J. McKinney*
Christopher J. McKinney
State Bar No. 00795516
700 East Sonterra, Suite 1221
San Antonio, Texas 78258
(210) 832-0932 – Telephone
(210) 568-4101 – Facsimile
Email: chris@themckinneylawfirm.com

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been delivered, as designated below, on February 27, 2012.

| | |
|---|---|
| Alan L. Rupe | |
| Texas Bar No. 24028461 | ❐ Hand Delivery |
| alan.rupe@kutakrock.com | ❐ Facsimile Transmission |
| KUTAK ROCK LLP | ❐ Certified Mail, Return Receipt Requested |
| 1605 N. Waterfront Pkwy., | ❐ U.S. First Class Mail |
| Suite 150 Wichita, KS 67206 | X  Electronic Filing (ECF) |
| Telephone: (316) 609-7900 | |
| Facsimile: (316) 630-8021 | |

                                                                             /s/ Christopher J. McKinney
                                                      CHRISTOPHER J. MCKINNEY